## John W. Putnam *v.* Spencer Clark.

Hay, or grain in the straw, may be attached by the officer's leaving a copy of the writ of attachment in the town clerk's office of the town where the property is situated; and the *leaving such copy* gives to the officer the constructive possession of the property, and title and possession sufficient to enable him to maintain an action therefor against any one who subsequently removes, or converts, the same.

It is not necessary, in such case, that the officer see the property, or go near it; and it is sufficient, if a copy of the attachment be left by him with the debtor at any time before the legal time of service upon the writ expires.

The officer, in such case, may maintain trespass against another officer, who, subsequent to the leaving the copy in the town clerk's office, and before the copy is delivered to the debtor, attaches and removes the same property by virtue of a legal writ of attachment against the same debtor.

TRESPASS for a quantity of hay and grain in the straw. Plea, not guilty, and issue to the court. The case was tried upon the following statement of facts agreed to by the parties.

"The hay and grain mentioned in the plaintiff's declaration was, on the 8th day of January, 1842, situated in the barn of Wm. Jewell, in Guildhall, about five miles from the town clerk's office in

said Guildhall, and was the property of said Jewell. The plaintiff, on said 8th day of January, was, and, until March after, continued to be, constable of Lunenburgh, with authority to serve writs through the county. On the said 8th day of January, 1842, George W. Gates, of Lunenburgh, sued out a legal writ of attachment against said Jewell, properly directed, returnable at Lunenburgh, before a justice of the peace, on the 20th of January, 1842, and delivered the same to the plaintiff; and on the same day, which was on Saturday, the plaintiff left in the town clerk's office of said Guildhall a true and attested copy of said writ, with his return, indorsed thereon, that, on said 8th day of January, 1842, he served said writ by attaching the hay and grain in question, and certifying that he caused said copy and return to be put on file in said office; and, on the 11th day of January, 1842, the plaintiff delivered the said Jewell a proper copy of the attachment, and of his return duly endorsed thereon; and, until the 11th of January, the plaintiff had not been within three miles of said property attached. Said Gates procured judgment against Jewell on the day of the return of said writ, and delivered his execution to a proper officer within thirty days thereafter, and said execution has been returned unsatisfied.

The defendant, on the 10th day of January, 1842, sued out a writ in due form against said Jewell, and on the same day delivered the same to the sheriff of Essex county, who, on the same day, by direction of the defendant, went to the barn of said Jewell, and saw and attached said hay and grain, which was turned out by said Jewell, and on the same day delivered to said Jewell a true and attested copy of the defendant's writ, and of his return of attachment thereon, and on the same day lodged in the town clerk's office of said Guildhall a true and attested copy of said writ, and his return of said attachment thereon. The defendant's writ was returned properly, and he procured judgment thereon against the said Jewell a day or two previous to the time when said Gates procured his judgment; and the defendant sued out a writ of execution on his said judgment, and, within thirty days, delivered the execution to the sheriff, and he, within thirty days after the rendition of the judgment, levied the execution on said hay and grain by direction of the defendant, and advertised and sold the same, at vendue,

to the defendant; and the defendant, before the commencement of this action, used up said hay, and threshed out and carried away said grain. The officer, to whom the execution of said Gates was delivered, within thirty days after the recovery of said Gates' judgment demanded said hay and grain of the plaintiff; but the plaintiff did not deliver it up, for the reason that the defendant had so attached it as aforesaid.

If, upon consideration of the foregoing facts, the court should be of opinion that the plaintiff is entitled to recover, the damages are to be $60,48; if otherwise, the judgment is to be for the defendant to recover his costs."

The court rendered judgment for the defendant; to which decision the plaintiff excepted.

*W. Heywood* for plaintiff.

This action depends upon the effect of an attachment of hay and grain made as directed by the Revised Statutes, page 181, c. 28, § 15.* The defendant contends, that, because the plaintiff did not deliver to Jewell, the debtor, a copy of the writ until the day after the defendant had made his attachment, the plaintiff's attachment was void. We answer to this that it is not the delivery of the copy to the debtor that effects the lien. If the copy was left with the debtor six days before the day of court, it was sufficient; and even if it had been left but five days before, and the debtor had appeared and answered to the suit, without pleading in abatement, it would be as effectual as any other service. And the same question is so treated in the case of *Newton* v. *Adams et al.,* 4 Vt. 437. The result of the reasoning in that case, is, that the object of leaving a copy of the writ with the debtor, or at his usual place of abode, is to

---

*Which section is, " When hay, grain in the straw, &c., shall be taken by
' virtue of any writ of attachment, or execution, the officer serving such pro-
' cess shall lodge a copy of the same, with his return, in the town clerk's
' office in the town where such property is taken, which shall be as effectual
' to hold such property against all subsequent sales, attachments, or execu-
' tions, as if such property had been actually removed and taken into the
' possession of such officer."

give *him* notice of the suit; and it is not necessary, in order to give others notice of the attachment; and the attachment, in a case like the present, is made notorious to every one but the debtor, by leaving the copy at the town clerk's office. See *Lowry* v. *Walker*, 4 Vt. 76; *Stanton* v. *Hodges*, 6 Vt. 64.

*J. A. Wells* for defendant.

1. To constitute a valid attachment of personal property, the articles should be taken into the actual custody of the officer, or placed under his exclusive control. 2 N. H. Rep. 68; 1 Wils. 44; 9 Johns. 132; 5 Mass. 157, 163, 271. An attachment is effected by *seizing* the property. 4 Vt. 444. Such possession should be taken as to give notoriety to the attachment, and to exclude acts of dominion over it by others. Ib. 445. To render a *sale* valid against subsequent purchasers, or attaching creditors, possession must accompany and follow the sale; and an attachment must have the same character. 7 Vt. 406.

Goods and chattels *being attached*, or taken by virtue of legal process, the next step is to preserve the lien thus acquired; which can be done in two ways, independent of the statute, viz. by *removal*, or by placing an agent over them. 12 Mass. 134. But the legislature, considering the great expense and loss attendant upon removal of certain kinds of property, have authorized another mode of retaining the lien acquired by attachment, to wit, the lodging of a copy of the precept and return in the office of the town clerk. The language is, " The officer *serving* such process shall lodge a copy of the same, *with his return*, in the town clerk's office." Here the word *serving* implies an act by the officer, precedent to the act of leaving the copy. He shall leave a copy of his precept " *with his return*." What return? Manifestly the return of what he *had* done in *serving* the precept; and in *serving* the precept the act to be done was the attachment of the defendant's property. Having so done, he could leave an agent in possession, until he went to the clerk's office and gave the statute notice of his doings to perfect his lien, or perhaps the law would extend to him *reasonable time* in which to make his copy and return, and carry the same to the town clerk's office.

But, should the court determine that it is unnecessary for an officer to take possession, or control, of the kinds of property specified in the statute, then we insist that the *delivery* to the debtor, or leaving at his house, a copy of the precept and a list of the property, *constitutes the attachment;* and that, until that is done, the officer acquires no right, even though he *has left* a copy with the town clerk.   Without this the debtor would certainly be justified in selling, and an innocent vendee in purchasing; and if, under such circumstances, a sale would be valid, manifestly an attachment would bind.   7 Vt. 406.   To hold a sale under such circumstances void would be most severe and unjust.

2.   The defendant's attachment was, in fact, precedent to that of Gates.   The language of the law is, "*When* the goods or chattels of any person shall be attached at the suit of another, *a copy of the attachment* and list of the articles attached shall be delivered to the party, whose *goods or chattels are so attached,* or left at the house," &c.;  Rev. St. 180, §13.   This statute, in terms, *requires* that the copy and list *shall* be delivered to the debtor *at the time of the attachment.*   It is an act required to be done to give a complete lien upon the property; it is part and parcel of the attachment, and, by the statute, is required to be done *at the time the officer assumes to control the property.*   The Revised Statute upon this subject is a copy of the old law; and the case of *Pearson* v. *French,* 9 Vt. 350, distinctly recognizes the principle that *the leaving the copy with the debtor is necessary to perfect an attachment.*   If so, by the imperative requirement of the statute the copy should have been given to the debtor on the 8th day of January.

But if the plaintiff insists that the statute gave him a *reasonable time* in which to leave his copy, *then* we insist the case is with the defendant, as the copy was not thus left.   The plaintiff commenced his proceedings on the 8th, and omitted any farther action until the 11th.   Having commenced his work, he was not at liberty to suspend, and renew it at a subsequent time, unless some insurmountable obstruction interposed.   The case of *Pearson* v. *French,* before referred to, is an authority upon this subject.   See, also, 4 Vt. 444.

The opinion of the court was delivered by

WILLIAMS, Ch. J. To constitute an attachment of property, it is necessary that the attaching officer take the same into his custody and possession. After the attachment, the officer must give notice to the debtor by delivering a copy, according to the requisition of the statute, before the time of service is out, or he will be considered as abandoning the attachment, and might possibly be treated as a trespasser *ab initio.* Between the time of attaching and delivering the copy, the officer must be considered as having a title to the property, and his possession as being legal against all others. When hay or grain is attached, the officer may leave a copy with the town clerk; and this is equivalent to and declared to be as effectual as if such property had been actually removed and taken into the possession of such officer. He is considered as having the constructive possession, and as having a sufficient title and possession to maintain an action therefor against any one who removes or converts the same. *Lowry* v. *Walker,* 4 Vt. 76. It cannot be necessary for the officer to go to the place where the property is situated, to make the attachment, any more than it would be to attach land, or real estate. Leaving a copy with the town clerk is the *act* of attaching and taking possession and giving notice to all concerned.

The plaintiff, in this case, having attached the hay and grain, on the 8th of January, by leaving a copy with the town clerk, and having perfected his attachment by giving the debtor a copy on the 11th of January, more than six days before the time set for trial, and a judgment having been rendered thereon, and the execution having been issued and delivered to an officer in season to charge the property, had such a title and possession as was sufficient to enable him to maintain this action. The defendant, who caused the same hay and grain to be attached on the 10th of January, acquired no right thereto by his attachment and the judgment and execution thereon, but his sale on the execution was an invasion of the rights of the plaintiff, for which this action is an appropriate remedy.

The judgment of the county court is therefore reversed, and judgment must be rendered for the plaintiff.